**Opinion issued July 28, 2026.**



**In the**

# Court of Appeals

**for the**

# First District of Texas

————————————

**NO. 01-22-00639-CR**

————————————

**LUIS MORON ROMERO, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1613284**

---

**MEMORANDUM OPINION**

This appeal returns to us on remand from the Texas Court of Criminal Appeals. A jury found appellant Luis Moron Romero guilty of murder and sentenced him to life imprisonment. In two issues, appellant argues that the trial court erred by (1) denying defense counsel's request for a jury instruction on the lesser-included

offense of manslaughter and (2) finding that appellant gave effective consent for the police to obtain a buccal swab to collect his DNA without a warrant. A prior panel of this Court overruled appellant's first issue but sustained his second after concluding that the State failed to prove by clear and convincing evidence that appellant's consent to the buccal swab was knowing and voluntary.[1] The trial court's determination as to consent resulted in the admission of DNA evidence during the punishment phase of appellant's criminal trial that connected him to an extraneous murder. This Court found the error harmful, reversed the trial court's judgment as to punishment only, and remanded the case to the trial court for a new punishment hearing.

The State filed a petition for discretionary review. The court of criminal appeals granted the State's petition, vacated this Court's judgment, and remanded the case to this Court to determine whether appellant preserved error related to the admission of the DNA evidence connecting him to the extraneous offense during the punishment phase of his criminal trial. On reconsideration of appellant's second issue, we conclude that appellant waived error and, finding it unnecessary to readdress appellant's first issue, affirm the trial court's judgment. *See Calhoun v.*

---

[1] The Honorable Sarah Beth Landau and the Honorable Julie Countiss, former Justices of this Court, were members of the panel that originally decided this appeal. Their terms of office expired on December 31, 2024, and they did not participate in this decision on remand.

2

*State*, 951 S.W.2d 803, 806 (Tex. App.—Waco 1997, pet. ref'd) (noting that appellate court has discretion, but may decline, to re-examine points of error previously addressed); *Austin v. State*, No. 10-13-00119-CR, 2015 WL 5312092, at *5 (Tex. App.—Waco Sept. 10, 2015, no pet.) (mem. op., not designated for publication) (declining to re-examine points of error not challenged on remand); *see also Page v. State*, 170 S.W.3d 829, 835 (Tex. App.—Corpus Christi–Edinburg 2005) (applying law-of-case doctrine and declining to re-examine, on remand, points of error previously addressed), *rev'd on other grounds*, 213 S.W.3d 332 (Tex. Crim. App. 2006).

## Background

### A. Appellant's DNA Sample

The factual background is detailed in our prior opinion, and we repeat only those facts that are relevant to this appeal on remand. *Romero v. State*, No. 01-22-00639-CR, 2024 WL 3974425, at *1–5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2024) (mem. op., not designated for publication), *vacated*, No. PD-1078-24, 2025 WL 925858 (Tex. Crim. App. Mar. 26, 2025) (not designated for publication).

After being arrested and given *Miranda* warnings,[2] appellant confessed to killing Maria Marquez. Following appellant's confession, a Houston Police Department (HPD) officer collected a buccal swab of appellant's saliva.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

Unrelated to Marquez's death, the Pasadena Police Department (PPD) was investigating the killing of Guillermo Gonzalez. PPD eventually learned of and requested appellant's DNA sample and compared the sample to the DNA that had been recovered in their investigation of Gonzalez's death. The Harris County Institute of Forensic Science (HCIFS) prepared a comparison analysis of appellant's DNA from the saliva sample and the DNA profile collected from Gonazlez's body and the car in which Gonzalez was found. During the punishment phase of appellant's trial, an HCIFS case management supervisor testified that the comparison analysis showed "very strong support" that appellant was a contributor to the DNA obtained from the interior handle of the driver-side door, steering wheel, and ignition of Gonzalez's car; "moderate support" that appellant was a contributor to the DNA obtained from the back pocket of Gonzalez's pants and left hand; and "very strong support" that appellant was a contributor to the DNA obtained from Gonzalez's right hand and his ankles.

During the State's closing of the punishment phase, the prosecutor argued that the evidence proved beyond a reasonable doubt that appellant had killed Gonzalez because it showed that Gonzalez and appellant had been co-workers, appellant lived in close proximity to the carwash where Gonzalez's body was found, surveillance footage showed a man walking from the carwash toward the apartment complex where appellant lived, and appellant told his sister and brother-in-law that he had

4

stabbed somebody. The prosecutor then discussed the results of the DNA comparison analysis, stating: "The DNA is incredibly probative in this case, and it tells you who the killer is."

## B.       Objections During Trial

During the guilt-innocence phase, the State offered into evidence a copy of a consent form signed by appellant in which appellant purportedly consented to the collection of his saliva. Defense counsel objected to the admission of the consent form into evidence because it was in English—appellant speaks Spanish and HPD officers interviewed him in Spanish—and it was not read to him or translated for him in Spanish. The State responded that appellant consented orally to the buccal swab and that the State was not relying solely on the written consent to prove the voluntariness of the collection. The trial court overruled appellant's objection and admitted the written consent form into evidence.

Later that day, the State sought to admit appellant's buccal swab into evidence. Appellant's counsel asked to approach the bench and, outside the presence of the jury, stated that she was objecting on the grounds that appellant's consent was not voluntary. The trial court did not entertain further argument and stated, "I already ruled it was admissible." Appellant's counsel then formally objected to the admission of the buccal swab in the presence of the jury "[o]n the grounds I stated earlier," and the trial court overruled the objection.

5

During the punishment phase of appellant's criminal trial, after the jury had found appellant guilty of Marquez's murder, the State sought to introduce swabs used to collect any trace DNA evidence at the scene of Gonzalez's death as well as swabs used to collect genetic samples from known persons of interest. Appellant's counsel stated, "Subject to my previous objection, to State's Exhibit 136 [the buccal swab collecting appellant's saliva], I—other than that, I have no objection." The trial court admitted the swabs.

After the trial court admitted the swabs, the State then sought to introduce forensic genetics reports comparing appellant's DNA sample—obtained from the buccal swab—to the DNA samples collected at the scene of Gonzalez's death. Because the forensic genetics reports were relevant only to prove that appellant committed an extraneous murder, the reports were never admitted during the guilt-innocence phase of the trial, which concerned Marquez's murder, not Gonzalez's. After the State offered the reports into evidence, appellant's counsel stated, "I have no objections . . . except I just ask that the State remove the stickies from the reports before they go back to the jury room, if they do at all." The trial court admitted the reports. An HCIFS case management supervisor then testified to the preparation and content of the reports without objection from appellant's counsel.

**Admission of Forensic Genetics Reports**

In his second issue, appellant contends that the trial court reversibly erred in admitting his buccal swabs and the DNA analysis results because police did not obtain his effective consent to collect his DNA. The State argues that appellant failed to preserve or, alternatively, waived his complaint because his trial counsel stated "no objections" to the admission of the forensic genetics reports linking appellant to the extraneous murder when the State offered them into evidence. Appellant argues that he preserved error because he objected to the admission of his buccal swab, on which the forensic genetics reports are based, and that he was not required to renew his objection when the State offered the reports.

To avoid waiving or forfeiting his complaint on appeal that the trial court erroneously admitted evidence, a criminal defendant must "keep making futile objections on pain of waiver." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (citation modified). Under this rule, a trial court's admission of objected-to evidence "usually will not be reversible error when the same evidence is subsequently admitted without objection." *Id.* at 717. However, failing to continuously object is not always fatal:

> If the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his "no objection" statement to constitute an abandonment of a claim of error that he had earlier preserved for appeal, then the appellate court should not regard the claim as "waived," but should resolve it on the merits.

7

*Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013). If the record is ambiguous, we resolve the ambiguity in favor of a finding of waiver. *Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015) (citing *Thomas*, 408 S.W.3d at 885).

Here, as in *Thomas*, there is no question that appellant preserved error as to the admission of the buccal swab on the grounds that appellant's consent to the swab was not voluntary: "Instead, the question is whether, having once preserved [his] appellate claim of error in this manner, the appellant took some affirmative action later that served to forfeit it." *Thomas*, 408 S.W.3d at 883-84. In *Thomas*, the trial court denied the defendant's motion to suppress and later admitted that evidence at trial after defense counsel stated that he had "no objections." *Id.* at 880. The court of criminal appeals concluded that the "no objection" statement did not waive the defendant's complaint on appeal that the trial court erred in denying the motion to suppress. *Id.* at 886. In reaching that conclusion, the *Thomas* court noted that (1) defense counsel "took pains to litigate" the motion to suppress and (2) the trial court made remarks that recognized the defendant's right to appeal the trial court's suppression ruling, remarks to which the State did not object. *Id.* at 886-87.

In the absence of other indicia, such as the effort of a suppression hearing or the trial court's remarks recognizing error preservation, appellate courts applying *Thomas* have typically required a running objection on the record that indicates that

the defendant did not intend, and the trial court did not construe, a statement of "no objection" as abandoning a claim of error to the admission of evidence. *See, e.g., Sanchez v. State*, 720 S.W.3d 529, 538 (Tex. App.—El Paso 2025, no pet.) (concluding "no objection" did not waive appellate complaint where defendant had been granted running objection); *Staley v. State*, No. 02-23-00053-CR, ___ S.W.3d ___, 2025 WL 727842, at *14 (Tex. App.—Fort Worth Mar. 6, 2025, pet. granted) (same); *McDonald v. State*, 676 S.W.3d 204, 209 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (same); *see also Valadez v. State*, 663 S.W.3d 133, 148 (Tex. Crim. App. 2022) (noting that appellate court could not rely on other-similar-evidence-admitted-without-objection rationale in harmlessness analysis where defendant obtained running objection).

Appellant never made a pretrial motion to suppress the buccal swab. Appellant's counsel objected to the consent form, and to the swab, when the State offered them into evidence. Additionally, appellant never requested—and the trial court never granted—a running objection to the admission of any evidence based on appellant's buccal swab. Nonetheless, appellant argues that a criminal defendant is not required to repeatedly object to evidence when doing so would be futile. Appellant principally relies on *Stairhime*. In *Stairhime*, the defendant argued on appeal that the trial court erred by refusing to allow his counsel to propound certain questions to prospective jurors. 463 S.W.3d at 905. At the conclusion of voir dire,

when the trial court asked whether either side had "an objection to the panel or as to the jury as selected," defense counsel responded, "No, Your Honor." *Id.* at 904-05. The court of criminal appeals held that defense counsel's failure to object "to the jury as selected" did not waive any error that defendant had preserved with respect to the questions he wanted to propound to prospective jurors. *Id.* at 906-07. The *Stairhime* court's decision did not rest on an exception to the general rule that a statement of "no objection" results in waiver. Rather, the court of criminal appeals held that, in context, the failure to object did not amount to waiver at all:

> We do not think it is remotely possible that the trial court's question in this case was directed at whether either party desired to waive previously preserved error that may have occurred during voir dire. Asking whether there is an objection to "the seating of the jury," or "to the panel," or "to the jury as selected," makes reference to no specific event that may have occurred previously during the course of the voir dire.

*Id.* at 906-07. The *Stairhime* court further recognized the general rule "in its *evidentiary* context" that "no objection" generally "constitutes a waiver of the previously preserved error." *Id.* at 906 (emphasis added) (citation modified).

Unlike the "no objection" statement in *Stairhime*, appellant's counsel's "no objection" statement relates directly to the complaint appellant raises on appeal. Appellant challenges the forensic genetics evidence admitted during the punishment

phase of his criminal trial that connects him to the extraneous murder.[3] To that evidence, appellant's counsel stated that she had "no objection." Appellant's counsel's failure to object to the admission of the forensic genetics reports—or obtain a running objection—falls squarely within the rule recognized in *Leday*, *Thomas*, and *Stairhime*: the failure to make futile objections risks waiver. Appellant points to no authority postdating *Leday* in which an appellate court has recognized or applied the principle that futile objections are unnecessary to preserve error.[4] *See*

---

[3]     In his post-remand brief, appellant argues that the trial court's admission of the buccal swab is the error and the admission of the forensic genetics reports is the harm. That argument does not address appellant's counsel's affirmative statement of "no objections" to the admission of the reports. As discussed further in this opinion, generally, a criminal defendant must continue to object to the same or similar evidence even if the basis for the objection is the same as one previously overruled or even if he believes the objection is futile.

[4]     Prior to this remand, in response to the State's motion for rehearing, appellant relied on *Graham v. State*, 710 S.W.2d 588 (Tex. Crim. App. 1986), and *Cardenas v. State*, 787 S.W.2d 160 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd), both of which predate *Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998). Appellant cited both cases for the proposition that futile objections are unnecessary. *Graham* is inapplicable. In *Graham*, defense counsel objected to a question by the prosecutor, the trial court overruled the objection, the prosecutor immediately restated the question, and defense counsel did not object. 710 S.W.2d at 591. The court of criminal appeals in *Graham* held that defense counsel did not need to repeat his objection to the restated question to preserve the complaint for appeal. *Id. Cardenas* presents a similar fact pattern. 787 S.W.2d at 162. Both are distinguishable. Unlike in *Graham* and *Cardenas*, there was no objection that immediately preceded the admission of the forensic genetics reports. Rather, appellant's counsel stated "no objections" to the admission of the reports and, between her prior objection and the admission of the reports, a witness gave brief testimony. When the State offered the reports, it did so for the first time. Appellant had not previously lodged any objection to the reports, even though the reports relied, in part, on the buccal swab of appellant's saliva that was the subject of a prior objection by appellant.

11

*Gardner v. State*, No. 02-09-00360-CR, 2010 WL 4569899, at \*4 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) ("[W]e have not found an opinion from the court of criminal appeals after *Leday* in which our highest court retreated from its adoption of the statement that the parties must keep making futile objections on pain of waiver." (citation modified)).[5] Indeed, the "futility rule" is so named, not because it excuses futile objections but, because it requires them. *Leday*, 983 S.W.2d at 718.

Moreover, the fact that an earlier objection states or implies that evidence was obtained illegally or in violation of the defendant's constitutional rights—and therefore any derivative evidence should likewise be excluded—does not change the analysis: absent a pretrial suppression ruling or running objection, generally a criminal defendant must object each time objectionable evidence is offered. *See Contreras-Cortez v. State*, No. 09-24-00315-CR, 2025 WL 1891820, at \*1-3 (Tex. App.—Beaumont July 9, 2025, no pet.) (mem. op., not designated for publication)

---

[5] We likewise have not found a decision from the court of criminal appeals retreating from the futility rule as tempered by *Thomas v. State*, 408 S.W.3d 877 (Tex. Crim. App. 2013). The court of criminal appeals has recently suggested that the futility rule results in a finding of harmlessness rather than of waiver. *See, e.g.*, *Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023) (applying futility rule to find error harmless); *Valadez v. State*, 663 S.W.3d 133, 147 (Tex. Crim. App. 2022) (noting that the rationale for not reversing when defendant fails to make futile objections, as expressed in *Leday*, is "either waiver or harmlessness"). However, the court of criminal appeals suggested neither in *Cook* nor in *Valadez* that harmful error can ever result when the defendant fails to make futile objections or obtain a running objection.

12

(concluding that defendant waived objection to admission of drug-analysis reports by affirmatively stating "no objection" despite pretrial motion to suppress all evidence from unconstitutional search).

Because appellant failed to object to the admission of the forensic genetics reports linking appellant to the extraneous murder or obtain a running objection, appellant forfeited any error in the admission of the reports for our review or, in the alternative, the error is harmless because of appellant's failure to object. *See Cook v. State*, 665 S.W.3d 595, 600 (Tex. Crim. App. 2023) (applying futility rule to find error harmless). At most, the record is ambiguous regarding whether appellant's counsel intended to waive her prior objections by stating "no objections" and, thus, we must resolve the ambiguity in favor of finding waiver. *Stairhime*, 463 S.W.3d at 906; *see Washington v. State*, 567 S.W.3d 430, 441-42 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (concluding that ambiguity in record favored waiver).

We overrule appellant's second issue.

### Ineffective Assistance of Counsel

On remand and for the first time on appeal, appellant argues that, if we conclude his second issue is not preserved or waived, we consider whether his trial counsel rendered ineffective assistance by failing to object to the admission of the forensic genetics reports. Appellant did not raise this issue in his original appellant's brief. Generally, all issues or points presented for review must be raised in the

appellant's original brief. TEX. R. APP. P. 38.1(f). Although we have discretion to grant review of supplemental issues, we see no reason here to depart from the appellate rules' general policy that all matters to be addressed should be raised in the appellant's original brief. *See Garrett v. State*, 220 S.W.3d 926, 929 (Tex. Crim. App. 2007) (noting that appellate court could, but was not required to, consider supplemental issue raised in motion for rehearing); *see also* TEX. R. APP. P. 38.7 ("A brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe."). In declining to exercise our discretion, we express no opinion on the merits of appellant's ineffective-assistance claim.[6]

## Conclusion

Having previously addressed appellant's first issue, we do not re-examine it. On remand, we overrule appellant's second issue, decline to review his supplemental issue, and affirm the trial court's judgment.

Amparo "Amy" Guerra
Justice

---

[6] A criminal defendant is not required to raise any claims of ineffective assistance of counsel on direct appeal; he may raise those claims in a postconviction habeas application. *See Ex parte Estrada*, 573 S.W.3d 884, 895 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (noting that ineffective-assistance claims may be raised in direct appeal or postconviction habeas application).

Panel consists of Justices Guerra, Gunn, and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).